Opinion by
Beaver, J.,
The- plaintiff alleged in his statement of claim “ That on or about August 1st, 1899, the defendant alleged and represented to the plaintiff that the defendant was forming a syndicate, to be called The Big Ogema Mining Syndicate, for the purpose of purchasing, for the sum of $27,000, certain large tracts of government land, consisting of about 2,160 acres, alleged to be of great-value, and containing valuable ores and minerals, situated in the Province of Ontario, Canada, the ownership of which lands the defendant then and there alleged and represented was controlled by him.
“That the defendant thereupon verbally agreed and undertook to sell to the plaintiff, for the sum of $1,000, an undivided one-twenty-seventh interest in and to the whole of said tracts of land, which one-twenty-seventh interest the plaintiff thereupon verbally agreed to purchase.
“That thereupon, in pursuance of said agreement and understanding, the plaintiff paid to the defendant the sum of $1,000 in two installments of $500 each. ■
“That the said sum of $1,000 was then and there had and received by the defendant in payment for the undivided one- *118 twenty-seventh interest of the plaintiff in and to the said tracts of land, and thereupon it became and was the duty of the defendant to convey and deliver, or cause to be conveyed and delivered, to the plaintiff, the said one-twenty-seventh interest in and to the said tracts of land.”
Alleging further that the defendant had not conveyed or delivered, or caused to be conveyed and delivered, to the plaintiff the said interest, or any part thereof, and that thereupon he became liable to pay to the plaintiff the sum of $1,000 paid to him, the defendant, in that behalf, etc.
Upon the trial of the cause, the defendant was called, as upon cross-examination. In the course of his examination, an agreement in writing was produced, which was offered in evidence by the plaintiff, between W. S. Dent, of the first part, and fourteen persons from Philadelphia and elsewhere, including the plaintiff and defendant, parties of the second part, in and by which the party of the first part represented that he “ owns and controls, by reason of discovery rights, ownership of survey, plans and field notes, and application under the provisions of the Lands Title Act for the Province of Ontario, certain parcels or tracts of land known as mining locations,” therein specifically described. Representing further, that “The said party of the first part represents that the said mining locations contain gold-bearing veins, as set forth and described in the general report of the property, dated May 7, 1899, and agreeing as follows: First, to obtain crown patents or fee simple deeds for the above-mentioned lands in the names of the parties hereto. Second, to transfer or set over to the said parties of the second part a two-thirds undivided interest in the before-mentioned locations, upon the following terms, to wit: ” Which said terms were that the parties of the second part were to subscribe or raise the sum of $18,000, “ to be paid over to the said party of the first part, for the purpose of paying the government dues and other expenses incident to obtaining the patents or deeds for said lands, and for the reimbursement in full of all claims for surveys and exploratory work done or entered into by the said party of the first part. Each of the parties of the second part agree to subscribe and pay over to the said party of the *119 first part the amounts set opposite their respective names;” the said plaintiff and the said defendant each subscribing and agreeing to pay the sum of $1,000. The purpose of the agreement was declared to be “ to create or form a parent syndicate which will float or secure the flotation of limited joint companies to develop or work any part or parts of the above-mentioned lands, and none of the parties hereto shall be held liable for any costs beyond the original amount of subscription, which it is understood shall be used for the purpose of obtaining titles to the above-mentioned lands.” This agreement was signed and sealed, among others, by the defendant and the plaintiff, respectively.
It appeared also in the testimony, and was not contradicted, that the defendant had paid to Dent the sum of $10,000, including his own subscription, $1,000 of which was advanced by him on account of the plaintiff’s agreement to pay the sum of $1,000 to Dent, for which Dent delivered to him ten or more receipts of $1,000 each, and he afterwards received from the plaintiff two checks of $500 each, sending him, on the receipt of the last one, Dent’s receipt for $1,000, which was received by the plaintiff and retained by him and produced upon the trial. Numerous letters from the defendant to the plaintiff were also produced which were in entire accord with the transaction as related by the defendant. The plaintiff was also called as a witness, confirming, in the main, the testimony of the defendant, admitting his signature to the agreement in writing and also the receipt for the money paid by the defendant to Dent. He also admitted, on cross-examination, in response to the question “For what purpose did you give him this money?” “I gave him $1,000 for a certain proportion of this land, just as that contract calls for.” It is very.evident, not only that' the statement of claim was not borne out in any particular by the testimony of the plaintiff, but that the contract with Dent was only for such interest as he had in the lands described in the agreement, and that the title was to be subsequently obtained* by him and conveyed to the parties to the agreement. There was no contractual relation of any kind established between the plaintiff and the defendant and no agreement to pay *120 back the money was shown, nor could any legal obligation to return it be inferred from the facts, as developed in the testimony.
The court below was clearly right in entering the nonsuit and the refusal to take it off was not error.
Judgment affirmed.